# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CORY MORGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 10284 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| GUARDIAN ANGEL HOME CARE, INC. ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

In her second amended complaint (dkt. 33), Cory Morgan alleges that Guardian Angel Home Care, Inc. failed to provide her overtime compensation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (count 1), and the Illinois Minimum Wage Law (IMWL), 820 Ill. Stat. Ann. Comp. § 105/1 *et seq.* (count 2); breached a January 2011 employment contract (count 3); breached a November 2012 employment contract (count 4); and, with regard to both alleged breaches, violated the Illinois Wage Payment and Collection Act (IWPCA), 820 Ill. Stat. Ann. Comp. § 115/3 *et seq.* (count 5). Before the court is Guardian Angel's motion for summary judgment on all counts. For the reasons stated below, the motion is granted in part and denied in part.[1]

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b).

# BACKGROUND[2]

Guardian Angel employs nurses to conduct home visits with patients. Cory Morgan is a registered nurse who worked for Guardian Angel. She had numerous duties, including, among others, rendering treatment to patients, reconciling medication with patients, documenting patient information in medical records, and coordinating with office staff, physicians, and patients' family members. Morgan began working for Guardian Angel in October 2010. At that time, she was paid a flat rate per patient visit, and the rate would vary depending on the type of patient visit (i.e., start of care visit, discharge visit, etc.). On January 5, 2011, Morgan signed an offer letter (January 2011 offer letter) to begin working as a full-time registered nurse on January 31, 2011. She would receive a salary of $71,000 and would earn additional compensation in the form of a flat rate for each patient visit performed in excess of 31 visits per week (excess visit). Again, the flat rate varied depending on the categorization of the visit (e.g., a regular visit would pay $50, while a discharge visit would pay $55).

Morgan recorded each patient visit in a system called Homecare Homebase. She accessed this online system using a tablet provided by Guardian Angel; there were sometimes technological problems that required pausing the program as well as Wi-Fi connectivity issues. Homecare Homebase records do not show any excess visits between January 31, 2011, and September 28, 2012. Morgan, however, also documented patient visits for 2011 and 2012 in

---

[2] Unless otherwise noted, the facts in this section are taken from the parties' Local Rule 56.1 statements and are construed in the light most favorable to the non-moving party. The court will address many but not all of the factual allegations in the parties' submissions, as the court is "not bound to discuss in detail every single factual allegation put forth at the summary judgment stage." *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). In accordance with its regular practice, the court has considered the parties' objections to the statements of fact and includes in this background only those portions of the statements and responses that are appropriately supported and relevant to the resolution of this motion. Any facts that are not controverted as required by Local Rule 56.1 are deemed admitted.

personal planners, and she recorded excess visits the week of March 21–27, 2011, and September 12–18, 2011. She was not paid for any excess visits on the paychecks corresponding to those dates.

In July 2012, Guardian Angel informed Morgan that she had been overpaid in the amount of $9,775. According to Guardian Angel, it had been paying additional compensation for visits in excess of 30 per bi-weekly pay period as opposed to per week as stated in the January 2011 offer letter. Guardian Angel prepared a spreadsheet explaining the miscalculation. The spreadsheet also showed that Morgan completed 13 excess visits between March and May 2012 (in contrast to the Homecare Homebase records). Guardian Angel and Morgan signed an agreement to deduct 15% from each paycheck until the overpayment was recouped.

Morgan returned to a flat rate pay basis on September 28, 2012. On November 8 of that year, she was presented with another offer letter (November 2012 offer letter) for a full-time position with a salary of $71,000 plus $40 for each patient visit over 100 in two bi-weekly pay periods. During her time working under the November 2012 offer letter, Morgan never conducted more than 100 visits in two bi-weekly pay periods. On May 21, 2013, Morgan began working on a part-time per diem basis. She resigned from Guardian Angel on August 2, 2013.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether a genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to

interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare*, 629 F.3d at 704.

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323–24.

## ANALYSIS

**I.      Violation of the FLSA (count 1)**

Morgan alleges that Guardian Angel violated the FLSA by failing to provide her overtime pay. Guardian Angel counters that Morgan was exempt from the FLSA. "Under the FLSA, employees are entitled to overtime pay for any hours worked over forty hours per week, unless they fall within a certain exemption set forth by the FLSA." *Blanchar* v. *Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013) (citing 29 U.S.C. §§ 207, 213.). "One such exemption includes employees who are employed in a 'bona fide executive, administrative, or professional capacity.'" *Id.* (citing 29 U.S.C. § 213(a)(1)). "Congress delegated to the Secretary of Labor the authority to define the scope of this section and the exemptions."[3] *Piscione v. Ernst & Young,*

---

[3] Numerous regulations relating to the FLSA were to be amended on December 1, 2016. The Department of Labor, however, has been enjoined "from implementing and enforcing the following regulations as amended by 81 Fed. Reg. 32,391; 29 C.F.R. §§ 541.100, 541.200, 541.204, 541.300,

*L.L.P.*, 171 F.3d 527, 533 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). "The burden is on the employer to establish that an employee is covered by a FLSA exemption." *Blanchar*, 736 F.3d at 756. "Because the FLSA is a remedial act, exemptions from its coverage are narrowly construed against employers." *Johnson* v. *Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660 (7th Cir. 2011).

For purposes here, the professional employee exemption applies to employees

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging, or other facilities; and

(2) Whose primary duty is the performance of work:

> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction[.]

29 C.F.R. § 541.300(a)(1–2). Guardian Angel argues that Morgan was employed in a professional capacity during the time at issue,[4] and therefore is exempt from the FLSA.

### A. Morgan Was Paid on a Salary Basis

Generally, "[a]n employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). There is no question that Morgan was paid $71,000 annually, which meets the $455

---

541.400, 541.600, 541.602, 541.604, 541.605, and 541.607" since November 22, 2016. *Nevada* v. *United States Dep't of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016). Accordingly, the court applies the regulations in effect prior to the injunction.

[4] Morgan concedes that, based on applicable statutes of limitation, counts 1 and 2 are based on alleged unpaid overtime for services rendered from December 9, 2011 through September 28, 2012.[4] (Dkt. 78 8–9.) The date of accrual, however, is December 23, 2014. *See Nehmelman* v. *Penn Nat. Gaming, Inc.*, 790 F. Supp. 2d 787, 792 (N.D. Ill. 2011) (collecting cases) ("[C]ourts in this district and others have found that for statute of limitations purposes, FLSA claims do indeed accrue each payday.").

weekly threshold. Morgan instead argues, somewhat confusingly and without legal support,[5] that the pay structure including the additional compensation paid for excess weekly visits was impermissible as it existed solely "for the purpose of circumventing overtime requirements." (Dkt. 78 at 9.) She seems to argue that she was not paid on a salary basis because Guardian Angel "deducted 15% of [her] pay from each paycheck, claiming that [she] had not performed the *quantity* of work that was originally thought." (*Id.* at 10.) This is not correct, however, as the reduction Guardian Angel made (and Morgan agreed to) was a result of an inadvertent overpayment not based on the number of patient visits Morgan conducted, but rather the time periods during which she conducted them.

Morgan then argues that, even if she was paid on a salary basis, the flat payment for each excess visit is subject to (and fails) a "fee basis" analysis. She attempts to tie Guardian Angel's payment schedule for excess visits to the length of time a particular visit would take, i.e., the longer the visit, the greater the pay. Therefore, according to Morgan, the payments are tied impermissibly to the number of hours worked. The court assumes she bases her argument on 29 C.F.R. § 541.605, which states "[p]ayments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." Her interpretation is incorrect. The fee basis analysis is not involved where a salary basis has been established. *See* 29 C.F.R. § 541.300(a)(1) (stating that the professional employee exemption applies to an employee "[c]ompensated on a salary *or* fee basis") (emphasis added). More importantly, the additional payments are permitted under 29 U.S.C. § 541.604(a):

> An employer may provide an exempt employee with additional compensation without . . . violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid

---

[5] Any reliance on § 541.118(b) is unavailing, as that regulation has not been in effect since 2004. *See infra* § II.

on a salary basis. . . . Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

29 C.F.R. § 541.604. Accordingly, Morgan meets the first prong of the professional employee exemption.

### B. Morgan's Primary Duty Required Advanced Knowledge

Under the second prong of the exemption, Guardian Angel must show that Morgan's primary duty was the performance of work requiring advanced knowledge in a field of science that is customarily acquired by a prolonged course of specialized intellectual instruction. Subsection D of the regulations further defines the requirements, *see* 29 C.F.R. § 541.301(a)(1–3), and the parties do not dispute that some of Morgan's duties involved the requisite advanced knowledge. *See* 29 C.F.R. § 541.301(e)(2) ("Registered nurses who are registered by the appropriate State examining board generally meet the duties requirements for the learned professional exemption."). Rather, Morgan argues that Guardian Angel has not established that her primary duty required her to use her advanced knowledge.

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700.

Morgan attempts to analogize her situation to *Raimondi* v. *Central DuPage Hospital*, No. 15 C 7780, 2017 WL 1178513 (N.D. Ill. Mar. 30, 2017). There, the plaintiff, a registered nurse employed at a hospital, argued that her primary duty was data entry, which did not require any

7

specialized knowledge. The record included evidence that the plaintiff was "responsible for collecting specific information about each stroke patient, tracking whether the hospital was meeting its own guidelines, and entering the data into an Excel spreadsheet" as well as communications from her superiors that she should prioritize data entry over other tasks. *Id.* at *4. Accordingly, the *Raimondi* court denied the defendant's motion for summary judgment.

Here, Morgan questions how Guardian Angel could establish a primary duty when she "was responsible for documenting patient information in their medical records, coordinating with other modalities that might have been in the home with the patient, reconciling medication, visiting patients according to doctor's orders, coordinating with office staff, physicians and family members, charting medical information, recording her time in Homecare Homebase, answering phone calls from patients, answering phone calls from other nurses and supervisors, and making scheduled or emergency visits on the weekends." (Dkt. 78 at 12.) What she fails to mention is that, unlike the plaintiff in *Raimondi*, Morgan "rendered treatment to patients at their homes" when she conducted visits. (Statement of Facts (SOF) ¶ 4.) Treating patients requires specialized nursing knowledge. Additionally, most of the other responsibilities she lists spring from her patient visits. Finally, the January 2011 offer letter was structured around patient visits: she was expected to conduct 30 per week, and any visit over that amount would result in additional payment.

For the reasons stated above, Morgan is exempt from the FLSA's overtime requirements, and Guardian Angel is entitled to summary judgment on count 1.[6]

---

[6] To the extent Morgan asserts a claim under the FLSA for a record keeping violation, her claim fails as she has no private right of action. *See Floyd* v. *Excel Corp.*, 51 F. Supp. 2d 931, 934 n.4 (C.D. Ill. 1999) (collecting cases) ("Under the statute, it appears that Plaintiffs cannot enforce this provision.").

## II. Violation of the IMWL (count 2)

Morgan also alleges that Guardian Angel failed to pay her overtime as required by the IMWL. "The overtime provision of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the FLSA." *Urnikis-Negro* v. *Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010). Guardian Angel correctly points out that Illinois has chosen to defer to the FLSA regulations regarding exemption standards. *See* 820 Ill. Comp. Stat. Ann. 105/4a(2)(E). Guardian Angel argues, therefore, that because Morgan is exempt under the FLSA, she is also exempt under the IMWL. The issue here, however, is more complicated.

The IMWL exempts

> [a]ny employee employed in a bona fide executive, administrative or professional capacity . . . as defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act, *as both exist on March 30, 2003*, but compensated at the amount of salary specified in subsections (a) and (b) of Section 541.600 of Title 29 of the Code of Federal Regulations as proposed in the Federal Register on March 31, 2003 or a greater amount of salary as may be adopted by the United States Department of Labor.

820 Ill. Comp. Stat. Ann. 105/4a(2)(E) (emphasis added). Therefore, Morgan's claim under the IMWL "is governed by the FLSA regulations that existed prior to the comprehensive amendments of April 23, 2004, which altered the definition of individuals 'employed in a bona fide executive, administrative, or professional capacity.'" *Zelenika* v. *Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *14 (N.D. Ill. July 23, 2012) (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 FR 22,122, 22,260–74 (April 23, 2004)); *see also Nettles* v. *Allstate Ins. Co.*,[7] 980 N.E.2d 103, 110, 2012 IL App (1st) 102247, 366 Ill. Dec. 303 (Ill. App. Ct. 2012)

---

[7] The court recognizes that other Illinois appellate courts have looked to the current FLSA regulations when deciding whether an employee is exempt under the IMWA. *See, e.g.*, *Resurrection Home Health Servs.* v. *Shannon*, 983 N.E.2d 1079, 10872013 IL App (1st) 111605, 368 Ill. Dec. 275 (Ill.

("The statutory language of section 4a(2)(E) is clear and unambiguous. In amending the section, the Illinois legislature sought to follow the federal rules and regulations exactly as they existed on March 30, 2003, except at a salary amount designated by the Department of Labor.").

The relevant test[8] for the professional exemption under the 2003 regulations requires Guardian Angel to show (1) that Morgan was compensated on a salary basis, (2) that her primary duty consisted of work requiring knowledge of an advanced type in a field of science or learning, and (3) that her responsibilities included "work requiring the consistent exercise of discretion and judgment." *Piscione*, 171 F.3d at 534. Assuming that the first two prongs are met, Guardian Angel has made no attempt to satisfy the third prong. The parties have provided scant evidence regarding the scope of Morgan's responsibilities during patient visits. While she admits to providing treatment to patients, she testified at her deposition that her responsibility was "[v]isiting patients in their homes according to doctor's orders." (SOF, Ex. A at 12:10–11.) With nothing more to go on, there is a question of material fact as to whether Morgan was permitted to

---

App Ct. 2013). Where "there is a conflict among the appellate courts or other persuasive indications that the Illinois Supreme Court would not follow the rulings of the appellate courts, [the court] must attempt to predict how the Illinois Supreme Court would decide the issue." *Sobilo* v. *Manassa*, 479 F. Supp. 2d 805, 815 (N.D. Ill. 2007) (citing *Allen v. Transamerica Ins. Co.,* 128 F.3d 462, 466 (7th Cir.1997); *Allstate Ins. Co. v. Westinghouse Elec. Corp.,* 68 F.Supp.2d 983, 986-87 (N.D.Ill.1999)). The Illinois Supreme Court has stated that "[c]lear and unambiguous language will be enforced as written." *Lutkauskas* v. *Ricker*, 28 N.E.3d 727, 736, 2015 IL 117090, 390 Ill. Dec. 74 (Ill. 2015). Here, the plain language of section 105/4a(2)(E) is clear and unambiguous.

[8] Under the 2003 regulations, if an employee made less than $250 per week, a defendant had to show that the employee satisfied 29 C.F.R. §§ 541.3(a–e) (2003) (long test). *Piscione*, 171 F.3d at 533. If an employee made more than $250 per week, however, the defendant had to show that the employee satisfied fewer requirements (short test). *Id.* (citing 29. C.F.R. § 541.315 (2003)). Morgan's salary meets the current minimum financial requirement under 29 C.F.R § 541.600 in accordance with 820 Ill. Comp. Stat. Ann. 105/4a(2)(E), and therefore the short test is to be used. *See Nettles*, 980 N.E.2d at 110–11 (holding that where an employee earns more than $455 per week, the short test is to be used when determining exemptions under the 2003 regulations).

exercise her own discretion and judgment during the visits or was using her advanced knowledge and skill to implement someone else's decisions.

As Guardian Angel carries the burden of establishing that Morgan is covered by an exemption, it is not entitled to summary judgment on count 2.

## III. Breach of Contract (count 3) and Violation of IWPCA (count 5) as to the January 2011 Offer Letter

Morgan asserts in counts 3 and 5 of her complaint that Guardian Angel failed to pay her for every excess visit as required by the January 2011 offer letter.[9] Guardian Angel moves for summary judgment, pointing to the fact that, as Morgan admits, the Homecare Homebase records do not show that she ever completed more than 30 visits in a single week between January 31, 2011, and September 28, 2012. Morgan, however, points to several pieces of evidence that contradict the Homecare Homebase records. First, a spreadsheet prepared by Guardian Angel in relation to the overpayment issue shows that Morgan completed 13 excess visits between March and May 2012. Additionally, Morgan documented her patient visits for 2011 and 2012 in personal planners, including excess visits in March and September 2011. Finally, the Homecare Homebase system at times suffered from technological problems.

Accordingly, an issue of material fact exists, and Guardian Angel is not entitled to summary judgment on count 3 or on count 5 to the extent that it is based on the January 2011 offer letter.

---

[9] Morgan also presents, for the first time, a new factual basis for her breach of contract claim, namely that she was on call more than one weekend a month and was to receive additional compensation for work performed on weekends in excess of one per month. This is an impermissible attempt to amend her complaint. *See Whitaker* v. *Milwaukee Cty., Wisconsin*, 772 F.3d 802, 807–08 (7th Cir. 2014) (explaining that a new factual basis for an existing claim, when first presented in response to a motion for summary judgment, is not to be considered). Accordingly, the court disregards Morgan's argument.

**IV.    Breach of Contract (count 4) and Violation of IWPCA (count 5) as to the November 2012 Offer Letter**

Morgan also asserts in counts 3 and 5 of her complaint that Guardian Angel failed to pay her for visits in excess of 100 per two-week pay period as required by the November 2012 offer letter. Morgan now concedes that she never conducted more than 100 patient visits in a two week period between November 2012 and June 21, 2013. Accordingly, Guardian Angel is entitled to summary judgment on count 4 as well as on count 5 to the extent that it is based on the November 2012 offer letter.

**CONCLUSION AND ORDER**

For the reasons stated above, defendant's motion for summary judgment (dkt. 68) is granted in part and denied in part. The motion is granted as to counts 1 and 4 as well as to count 5 to the extent that it is based on the claims in count 4. Defendant's motion for summary judgment is denied as to counts 2 and 3 as well as to count 5 to the extent that it is based on the claims in count 3.

Date:  March 30, 2018

_____
U.S. District Judge Joan H. Lefkow